UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| IN RE: | * | CASE NO: 2:22-bk-52799 |
| | * | (Chapter 11) |
| EVERGREEN SITE HOLDINGS, INC. | * | |
| | * | (Judge Preston) |
| Debtor/Debtor-in-Possession. | * | |
| | | (REQUEST FOR ORAL HEARING) |

**BRIEF OF OBJECTION TO BOTH: A LIMITED RELIEF FROM STAY, OR ABSTENTION PERTAINING TO CORE PROCEEDINGS FOR WHICH THIS COURT HAS JURISDICTION
FILED BY CREDITOR TIMBER VIEW PROPERTIES, INC. (HUMPHREYS, KEVIN)**

Now comes Timber View Properties, Inc., ("Timber View"), the secured creditor, pursuant to the Court's *Opinion and Order* filed on March 8, 2023 (Doc. 129), and tenders this brief which objects to both a limited relief from stay or abstention as to core proceedings for which this Court has statutory and/or exclusive jurisdiction.  Timber View incorporates by reference the facts, arguments, and exhibits appearing within its response filed on December 5, 2022 (Doc. 68); and its *Supplemental Brief* filed on January 12, 2023 (Doc. 103).  Timber View also requests an oral hearing so that it may present appropriate evidence, argument, and rebuttal to the Court to facilitate the Court's just consideration of the issues.

**I. Law and Argument:**

**A. Fundamental Legal Principles and Issues that support Timber View's Objection.**

**1. This Court is charged with the administration of this Bankruptcy Proceeding, which includes hearing Core Proceedings.**

The rudimentary difference between a bankruptcy court and a district court creates a jurisdictional distinction that is significant; and which should be carefully considered by this Court with respect to the inquiry now under consideration.  As explained below, there is no

1

**absence** of jurisdiction in this Court to proceed with respect to its core proceedings; rather Congress has expressly conferred jurisdiction for core proceedings. If the distinctions between the independent source of jurisdiction of a bankruptcy court compared to a district court are not properly preserved, then those opinions finding an absence of jurisdiction in the district courts to hear certain claims may foster an erroneous conclusion of an absence of jurisdiction in the bankruptcy courts; notwithstanding, the express congressional grant of jurisdiction to bankruptcy courts to hear and administer core proceedings.

    a. **Ordinary Federal Court Jurisdiction.**

It is beyond dispute that federal courts are courts of limited jurisdiction. The United States Supreme Court stated in *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 102 S. Ct. 2099 (1982).

> The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1. Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction. Again, this reflects the constitutional source of federal judicial power: Apart from this Court, that power only exists "in such inferior Courts as the Congress may from time to time ordain and establish." Art. III, § 1.

*Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 701-02, 102 S. Ct. 2099, 2104 (1982). Unlike the commencement of a federal bankruptcy case, a federal district court case commences with the filing of a complaint through which the plaintiff asserts one or more claims seeking redress. A plaintiff in a district court case bears the burden of establishing the federal district court's jurisdiction over a claim. See, *Shea v. State Farm Ins. Co.,* 2 F. App'x 478, 479 (6th Cir. 2001) (per curiam) (citing *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993)). If the plaintiff fails to establish a basis for the district court's jurisdiction to hear the claim, then the district court must dismiss the claim for lack of subject matter jurisdiction. See, *Omanwa v. Mid-Century Ins. Co.*, No. 18-6060, 2019 U.S. App. LEXIS 15086, at *7 (6th Cir.

May 21, 2019) (quoting Fed. R. Civ. P. 12(h)(3) "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

One such example of a district court's **absence** of jurisdiction arises in connection with the *Rooker-Feldman* doctrine. "[T]he *Rooker-Feldman* doctrine stands for the unremarkable proposition that a federal district court lacks subject matter jurisdiction to review a state court decision. *Id.* (stating that "a district court [cannot] exercise appellate review of a state court decision"). See, *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 241 F. App'x 285, 287 (6th Cir. 2007) (quoting *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006)). Simply put, Congress has not conferred statutory authority upon district courts to adjudicate a plaintiff's claim that seeks appellate review of a state court decision. In other words, *Rooker-Feldman* acknowledges the **absence** of subject matter jurisdiction of a district court to entertain a claim in a complaint seeking appellate review. Rather, Congress expressly confers appellate jurisdiction to the United States Supreme Court, rather than the district courts. See, 28 U.S.C. § 1257.

It is well settled that **issue preclusion** determines the "effect of a judgment in foreclosing relitigation of a matter that has been actually litigated and decided" in a prior case. See, *In re Fordu*, 201 F.3d 693, 703 (6th Cir. 1999). As to this point, in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005), the United States Supreme Court preserved the distinction between the *Rooker-Feldman* doctrine and issue preclusion. The Court held: "[i]f a federal plaintiff presents an independent claim, even one that denies a state court's legal conclusion in a case to which the plaintiff was a party, **there is jurisdiction**, and state law determines whether the defendant prevails under preclusion principles." *Exxon Mobil Corp.,* 544 U.S. at 283, 125 S.Ct. at 1521 (emphasis added); see also,

3

*Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) ("This situation was explicitly addressed by the *Exxon Mobil* Court when it stated that even if the independent claim was inextricably linked to the state court decision, preclusion law was the correct solution to challenge the federal claim, not *Rooker-Feldman*.")  Therefore, the presence of an independent claim (e.g. a claim not seeking appellate relief), where a jurisdictional basis is established, may only be impacted by a prior state court decision, if at all, by the application of preclusion principles – even when the state court's legal conclusion is denied by the claim.  It is error to conclude that *Rooker-Feldman* bars any or all claims to deny or reach a different conclusion appearing in a state court judgment; such a conclusion disregards the preceding quotation by the Supreme Court.  Accordingly, where a claim does not seek to reverse or vacate a prior state court judgment regardless of the nature of the claim, the state court judgment will only have its issue preclusive effect, if any, that would be afforded to it under state law.  Issue preclusion in a subsequent proceeding, does not constitute the absence of a federal court's underlying jurisdiction.  Based upon the principles of res judicata, Evergreen Site Holdings, Inc., and Timber View Properties, Inc., **are not barred** from demonstrating the absence of any issue preclusive effect arising from the underlying state court judgment(s) at issue in the proofs of claim filed in this case.

    b. **The Existence of Bankruptcy Court Jurisdiction.**

The existence of an "independent claim" in a federal district court proceeding, (perhaps more accurately described as an "independent basis for jurisdiction"), is readily apparent in a bankruptcy case.  The statutory grant of jurisdiction is expressly conferred upon the specialized bankruptcy courts with respect to bankruptcy administration and core proceedings.  Since the filing of Evergreen Site Holdings, Inc.'s Petition, this Court has been vested with exclusive

jurisdiction of the administration of the Debtor's Bankruptcy case and the assets within its estate which include the real estate at issue. See, 28 U.S.C. § 1334. It is well settled that:

> "The power of the Bankruptcy Court to subordinate claims or to adjudicate equities arising out of the relationship between the several creditors is complete." *Sampsell v. Imperial Paper & C. Corp.,* 313 U.S. 215, 219 [61 S. Ct. 904, 907, 85 L. Ed. 1293] (1941). Further, "In the exercise of its equitable jurisdiction, the Bankruptcy Court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the Bankruptcy estate." *Pepper v. Litton,* 308 U.S. 295, 308, 60 S. Ct. 238, 246, 84 L. Ed. 281.
>
> *Hunter Sav. Ass'n v. Georgetown of Kettering*, 14 B.R. 72, 80 (Bankr. S.D. Ohio 1981).

The express jurisdiction conferred upon this Court by statute includes those determinations to be made with respect to the Debtor's estate involving: **(a)** the allowance or disallowance of claims (11 U.S.C. §157(b)(2)(B), determined pursuant 11 U.S.C. §502); **(b)** the validity, extent, or priority of liens (11 U.S.C. §157(b)(2)(K); and **(c)** claims seeking confirmations of plans (11 U.S.C. §157(b)(2)(L)). Notably, this Court has exclusive jurisdiction over the claims allowance process. See, *In re Procare Auto. Serv. Sols., LLC*, 359 B.R. 653, 657 (Bankr. N.D. Ohio 2007); see also, *In re Dow Corning Corp.*, 215 B.R. 346, 352 (Bankr. E.D. Mich. 1997), to wit:

> Additionally, bankruptcy law has long recognized that the claims-allowance process is within the exclusive jurisdiction of the bankruptcy court. *Katchen v. Landy*, 382 U.S. 323, 329, 15 L. Ed. 2d 391, 86 S. Ct. 467 (1966) ("The expressly granted power to 'allow,' 'disallow' and 'reconsider' claims . . . is of 'basic importance in the administration of a bankruptcy estate,'. . . [and] is to be exercised in summary [now referred to as core] proceedings. . . ."); *Pepper v. Litton*, 308 U.S. 295, 304, 84 L. Ed. 281, 60 S. Ct. 238 (1939) ("Among . . . [a bankruptcy court's] granted powers are the allowance and disallowance of claims . . . . In such respects the jurisdiction of the bankruptcy court is exclusive of all other courts."); *Lesser v. Gray*, 236 U.S. 70, 74, 59 L. Ed. 471, 35 S. Ct. 227 (1915) ("A bankruptcy court in which an estate is being administered has full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or claim against the estate is based. This is essential to the performance of the duties imposed upon it."); *In re McLaren*, 990 F.2d 850, 853 (6th Cir. 1993) (concluding that the claims-allowance process is a core proceeding); *cf. Granfinanciera*, 492 U.S. at 57-59.

*In re Dow Corning Corp.*, 215 B.R. at 352.  See also *In re F & T Contractors, Inc.*, 718 F.2d 171, 178 (6th Cir. 1983) ("Under what is described as the bankruptcy court's summary jurisdiction, it has exclusive jurisdiction to determine and liquidate all claims dealing with property that is within the actual or constructive possession of the trustee or receiver in bankruptcy.")(citing *Isaacs v. Hobbs Tire & Lumber Co.*, 282 U.S. 734, 737, 75 L. Ed. 645, 51 S. Ct. 270 (1931), and *Harrison v. Chamberlain*, 271 U.S. 191, 193, 70 L. Ed. 897, 46 S. Ct. 467 (1926)).

On December 14, 2023, various parties filed proofs of claim in this case, triggering the claims allowance process.  It is well settled:

> [B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power. [*Granfinanciera, S.A. v. Nordberg*,] 492 U.S.[33] at 58-59, and n.14 (citing *Katchen, supra*, at 336).

*Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S. Ct. 330, 331 (1990).  Accordingly, independent claims within the exclusive jurisdiction of this Court are now pending before this Court.  Moreover, in accord with this Court's reference in footnote 6 of its March 8, 2023, *Opinion and Order,* (Doc. 129), although a creditor's proof of claim may be supported by a pre-petition state court judgment, any objection to that proof of claim and related arguments that the creditor's claim should be disallowed is governed by the principles res judicata (preclusion doctrines) not the *Rooker-Feldman* doctrine.  See, *In re Razzi*, 533 B.R. 469, 478-79 (Bankr. E.D. Pa. 2015).

With respect to this bankruptcy proceeding and its core proceedings, there is no absence of jurisdiction within this Court.  The Sixth Circuit has made equally clear that "the *Rooker-Feldman* doctrine provides no protection in areas where Congress has explicitly endowed federal courts with jurisdiction . . ." See, *Hamilton v. Herr* (*In re Hamilton*), 540 F.3d 367, 372 (6th Cir.

2008). Nor does *Rooker-Feldman* "bar a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." See, *Hall v. Callahan,* 727 F.3d 450, 453 (6th Cir. 2013)(quoting *Evans v. Cordray,* 424 F. App'x. 537 (6th Cir. May 27, 2011)). In *Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 195 (B.A.P. 6th Cir. 2002), the panel concluded that *Rooker-Feldman* does not support the surrender of a bankruptcy court's exclusive jurisdiction. The jurisdictional distinction with respect to bankruptcy courts, compared to ordinary district courts is also supported by *Sasson v. Sokoloff* (*In re Sasson*), 424 F.3d 864 (9th Cir. 2005). To wit:

> Application of the *Rooker-Feldman* doctrine in bankruptcy is limited by the separate jurisdictional statutes that govern federal bankruptcy law. *Gruntz v. County of Los Angeles (In re Gruntz),* 202 F.3d 1074, 1079 (9th Cir. 2000) (en banc). The *Rooker-Feldman* doctrine has little or no application to bankruptcy proceedings that invoke substantive rights under the Bankruptcy Code or that, by their nature, could arise only in the context of a federal bankruptcy case. *Id.* at 1081. In the exercise of federal bankruptcy power, bankruptcy courts may avoid state judgments in core bankruptcy proceedings, *see, e.g.,* 11 U.S.C. §§ 544, 547, 548, 549, may modify judgments, *see, e.g.,* 11 U.S.C. §§ 1129, 1325, and, of primary importance in this context, may discharge them, *see, e.g.,* 11 U.S.C. §§ 727, 1141, 1328.
>
> The *Rooker-Feldman* doctrine has no application here. Sasson is not seeking to have the bankruptcy court review the merits of the state court judgment; rather, he is attempting to prevent the bankruptcy court from giving effect to the state court judgment.

*Sasson v. Sokoloff (In re Sasson),* 424 F.3d at 871. In this case, neither the Debtor nor Timber View are seeking to have this bankruptcy court conduct a review of the merits of the state court judgment as an appellate review. Rather they are attempting to prevent the bankruptcy court from giving effect to the state court judgment. Timber View relies upon the principle that issue preclusion does not apply to the state court foreclosure judgment at issue – since it is not a final judgment for the reasons explained above.

**2. The Liens at Issue in this case do not implicated unsettled issues of state law.**

7

The state law issues that are implicated in the alleged 2018 judgment liens of Karry Gemmell and Reg Martin do not involve an application of unsettled state law. Rather, as illustrated below, the state law issues are in most instances long settled, and rely on Ohio precedent that dates back over one hundred years. The following sections support this point.

### a. It is well settled that a Lien is not an interest in property.

Unlike a mortgage[1] which includes a conveyance by the mortgagor of an interest in property to the mortgagee, **a lien does not constitute a legal interest in land**. The Supreme Court of Ohio has repeatedly held that "[a] lien is 'a hold or claim which one person has upon the property of another as a security for some debt or charge.'" See, *Michael v. Miller,* 2022-Ohio-4543, (Slip. Op.), at ¶26, quoting *State ex rel. Tennant Fin. Corp. v. Davis*, 111 Ohio St. 569, 574, 2 Ohio Law Abs. 725, 3 Ohio Law Abs. 8, 146 N.E. 82 (1924), quoting *Bouvier's Law Dictionary*. In *Gustafson v. Buckley*, 96 Ohio App. 115, 121 N.E.2d 280 (1953) the court explained:

> All the authorities hold that a lien upon land is not an estate or interest in the land. 'A lien is not, strictly speaking, either a *jus in re* or *jus ad rem*; that is, it is not a property in the thing itself, nor does it constitute a right of action for the thing. It more properly constitutes a charge upon the thing.' Story's Eq. Jur. ss. 506, 1215; *Brace* v. *Duchess of Marlborough*, 2 P. Wms., 491; *Ex Parte Knott*, 11 Vesey, 617. '"Lien" is a term of very large and comprehensive signification. In its widest sense it may be defined to be a hold or claim which one person has upon the property of another as a security for some debt or charge. But it never imports more than security; it confers no right of property.' 19 Am. & Eng. Ency. Law (2d Ed.), 6.

*Gustafson,* 96 Ohio App. at 118, 121 N.E. 2d 281. In other words, "[a] lien *upon* property creates no title to or in it." See, *Gustafson,* 96 Ohio App. at 119, 121 N.E. 2d at 282 (quoting *Merchants' Insurance Co. v. Frick*, 5 Dec. Rep., 47, 2 Am. L. Rec., 336 (Cinn. Superior

---

[1] Jones, Leonard A. *A Treatise on the Law of Liens* (1914) §11, p. 11-12. ("A mortgage more than a lien . . . it is a transfer of property itself, as security for the debt.")

8

Ct. 1873) (emphasis in original). Thus, while a certificate of judgment creates a lien "upon" the land(s) of the judgment debtor – it does not purport to create an interest in the lands of the debtor. See, R.C. 2329.02.

### b. **It is settled that the validity and function of a Lien is tested at the time of execution and levy.**

Liens confer a *right to acquire* by a levy/execution. See, *Bank of Muskingum v. Carpenter's Adm'rs*, 7 Ohio 21, 69 (1835). The lien upon land is an inchoate right to be given legal effect, if at all, through an execution which marshals the lien with respect to competing claims or interests pertaining to the underlying property. Being a *right*, a lien is tested with respect to its validity, and effect, as part of the execution (such as a levy constituting an assignment in trust for the benefit of creditors – a classic bankruptcy estate). See, *Scott v. Dunn,* 26 Ohio St. 63, 66 (1875); *Pence v. Cochran,* 6 F. 269 (S.D. Ohio 1881)(recognizing that the validity of liens involving a bankrupt's assets are determined pursuant to Ohio law, as of the date of the adjudication of bankruptcy.) "It is black letter law that the filing of a petition in bankruptcy operates as a collective execution on property of the debtor in behalf of all creditors." See, *In re Conyers*, 129 B.R. 470, 473 (Bankr. E.D. Ky. 1991). Therefore, with respect to the Debtor's voluntary assignment for the benefit of its creditors, (the levy/execution creating its bankruptcy estate); it is the filing date of the petition that establishes the date for which the validity, priority, and extent of any lien interests upon Debtor's property must be tested pursuant to Ohio law. In the foreclosure action, the state trial court made no determination in conjunction with the execution/levy made for the benefit of the Debtor's creditors in this bankruptcy case. In fact, as it relates to Timber View's mortgage interests, which constitute both an actual interest and a lien interest in the Debtor's real property, the state trial court judge made no determination or marshaling of Timber View's mortgage interests or lien rights.

Since judgment liens (unlike mortgages) do not constitute an interest in property, the effectiveness or validity of a judgment lien must be given effect, if at all, in conjunction with the applicable execution at issue; and conditioned upon validity of the judgment referenced therein. The right of a lien upon real property is conditional, it "is a ***right*** to have the debt satisfied out of the land . . . and the lien cannot exist in the absence of the debt . . . [liens] being secondary to an existing obligation . . . [i]f there is no debt the lien ceases to have life or existence for its function has vanished." See, *Settlers Walk Home Owners Ass'n v. Phx. Settlers Walk, Inc.*, 12th Dist. App. Nos. CA201409-116 thru 118, 2015-Ohio-4821, ¶18 (citations and quotations omitted, emphasis added). On February 5, 2019, the Ohio Fourth District Court of Appeals determined that the March 21, 2018, judgment entry in the Gemmell v. Anthony case (upon which Karry Gemmell and Reg Martin's judgment liens are based) was not a final judgment. See, *Gemmell v. Anthony*, 4th Dist. No. 18 CA0008, 2019-Ohio-469, ¶¶35-36, 39. Based upon the Court of Appeals determination the March 21, 2018, judgment ceased to have any legal effect as a final judgment. Therefore any judgment lien based upon that March 21, 2018, became *void ab initio* because Ohio Rev. Code § 2329.02, only permits the creation of a judgment lien upon a final judgment.[2] Moreover, since the judgment upon which the alleged 2018 judgment liens ceased,

---

[2] The Ohio Supreme Court held that the phrase "any judgment" which may give rise to a judgment lien as used within Ohio's judgment lien statute means a "final judgment" that is subject to execution. See, R.C. 2329.02, and *Towner v. Wells,* 8 Ohio 136, 140-141 (1837); see also *Wheeler v. Ohio State Univ. Med. Ctr.*, 4th Dist. No. 03CA2922, 2004 Ohio 2769, ¶19; *Profancik v. Short's Athletic Club, Inc.*, 9th Dist. No. 2744-M, 1998 Ohio App. LEXIS 6093 (Dec. 16, 1998); *Nwabara v. Willacy*, 8th Dist. No. 71122, 1997 Ohio App. LEXIS 1524 (Apr. 17, 1997). A non-final, interlocutory order is not capable of execution. *Aselage v Lithoprint, Ltd.*, 2009 Ohio 7036, Para. 28 (2nd Dist, App), citing *Marion Prod. Credit Assn. v Cochran*, 40 Ohio St. 3d, 265, Para. 1 (1988). See Also, *Dyer v Schwan's Home Service, Inc.*, 2017 Ohio 4139 (10th Dist App), Para. 24. "…in order for a judgment to be the basis for the creation of a lien, such judgment must be final, conclusive of the controversy between the parties" *Tyler Refrigeration Equip. Co. v. Stonick,* 3 Ohio App. 3d 167, 168, 444 N.E.2d 43 (1981).

the liens necessarily ceased to have or existence as a matter of law. See, *Settlers Walk Home Owners Ass'n.,* supra.

### B. **Timber View Objects to a Limited Relief from Stay.**

Timber View objects to a limited relief from stay in the interest of judicial economy and to avoid unnecessary expense, as explained below. Nevertheless, if this Court decided to order limited relief from stay to proceed with pending state court appeal, then Timber View requests that such limited relief from stay should: (1) not limit or prevent the Debtor's actions taken to obtain relief from the trial court's judgment in any appropriate forum; and (2) no relief from stay should be permitted to allow for any confirmation of the prior foreclosure sale, or any other sale of the Debtor's real estate interests without a motion and hearing had before this Court to avoid prejudice to Debtor's legitimate creditors, such as Timber View.

As already demonstrated in prior hearings before this Court, the state trial court did not issue what constitutes final foreclosure order. At prior argument, Timber View's counsel referred to the state court foreclosure judgment as a judicial equivalent of a half-baked cake; due to its incomplete adjudication of the state court foreclosure claim. Ohio law supports this conclusion. The Ohio Supreme Court has ruled "[t]he order of foreclosure determines the extent of **each** lienholder's interest, sets forth the priority of the liens, and determines the other rights and responsibilities of **each** party in the action." *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 305-06, 2014-Ohio-1984, ¶ 39, 11 N.E.3d 1140 (emphasis added). Applying Ohio law, within *In re Mullins*, 449 B.R. 299, 303 (Bankr. S.D. Ohio 2011, J. Preston), this Court wrote "[i]n a state court foreclosure action, it is necessary for the court to determine each lien holder's interest in order to issue a final judgment." *In re Mullins,* 449 B.R. at 303. These requirements are well settled:

"A judgment entry ordering a foreclosure sale is a final, appealable order pursuant to R.C. 2505.02(B) **if it resolves** all remaining issues involved in the foreclosure. This includes the questions of outstanding liens, including what other liens must be marshaled before distribution is ordered, the priority of any such liens, and the amounts that are due the various claimants."

*Whipps v. Ryan*, 10th Dist. App. Nos. 2008-Ohio-1216, ¶ 19 (quoting *Davilla v. Harman*, Mahoning App. No. 06MA89, 2007 Ohio 3146, ¶ 18, discretionary appeal not allowed, 116 Ohio St. 3d 1412, 2007 Ohio 6140, 876 N.E.2d 969) (emphasis added); see also, *Eddy v. Matthews*, 3rd Dist. No. 1-07-77, 2008-Ohio-1786, ¶ 26, 176 Ohio App. 3d 287, 292-93, 891 N.E.2d 1211, 1216 ("an order of foreclosure must include the following to be final: . . . what other liens must be marshaled . . . the priority of such liens; and the amounts that are due various claimants").[3] A foreclosure decree that "does not establish the priorities of all interests in a subject property is not a final, appealable order." See, *Wells Fargo Fin. Leasing, Inc. v. Rinard*, 5th Dist. No. 06-CA-4 2006-Ohio-5544, ¶ 16 (citing *Gaul v. Leeper* (July 15, 1993), Cuyahoga App. No. 63222, 1993 Ohio App. LEXIS 3519, unreported; *State Ex Rel Montgomery v. Ohio Cast Products, Inc.* (June 26, 2000), Stark App. 1999CA00394, 2000 Ohio App. LEXIS 2839, unreported.) It is "upon final judgment being entered upon the mortgage, 'a writ . . . might issue, by virtue of which the mortgaged premises should be taken in execution, and. . . by law be disposed of for the satisfaction of judgments.'" *Allen* v. *Parish*, 3 O. 187, 188-89 (1829).

The decisions of the trial court rendered on March 3, March 18, and March 28, 2022, do not set forth the nature of all the claims and interests of the parties in the Debtor's real estate made subject to the foreclosure action. Noticeably absent is any adjudication of Timber View's

---

[3] (quoting *Centex Home Equity Co., L.L.C. v. Williams,* 3rd Dist. No. 6-06-07, 2007 Ohio 902); *PHH Mortg. Corp. v. Albus*, 7th Dist. No. 09 MO 9, 2011-Ohio-3370, ¶ 18 (citing *Second Natl. Bank of Warren v. Walling*, 7th Dist. No. 01-C.A.-62, 2002 Ohio 3852, ¶18; *Mortgage Electronic Registration Systems, Inc. v. Green Tree Servicing, LLC*, 9th Dist. No. 23723, 2007 Ohio 6295, ¶9).

first mortgages duly recorded of record with respect to the Debtor's real property. No determination was made by the state trial court as to the priorities of **all** the liens, mortgages, and/or claims at issue. For these reasons there is no final adjudication of the trial court with respect to the foreclosure action.[4]

Whether or not the Fourth District Court of Appeals reverses, affirms, or dismisses the appeal for lack of a final appealable order, there will remain as matter of law – no final foreclosure order from the trial court. Accordingly, Timber View submits that proceeding with the appeal is neither time nor money well spent. An anticipated delay of nine (9) months to one (1) year, together with the avoidable expenses to be borne by the parties, coupled with the cash-strapped financial condition of the Debtor support Timber View's objection. But for a reversal, nothing will change as to the procedural posture of this case. The need to administer the various proofs of claim will remain. On the other hand, this bankruptcy case will not be hindered by the incomplete state foreclosure judgment which has no issue preclusive effect in the administration of this bankruptcy case, or the filed proofs of claim.

C. **Timber View Objects to Abstention.**

In so far as this Court's reference to abstention within its order pertains the provisions of 28 U.S.C. § 1334(C)(1) or (C)(2), Timber View objects to abstention thereunder. At the outset it must be noted that are no proceedings pending in this Court upon which abstention might be applied, in the first instance.

---

[4] The trial court's inclusion of 54(B) language which permits an intermediate appeal of a final adjudication upon a single cause of action, while other unrelated causes of action remain pending does not convert a non-final order into a final order. See, *Nationwide Mut. Fire Ins. Co. v. M.B. Roofing Sys., Inc.*, 10th Dist. No. 12AP-44, 2012-Ohio-6195, ¶ 12; see also, *Korodi v. Minot,* 40 Ohio App.3d 1, 3 (10th Dist. 1987); *Dodrill v. Prudential Ins. Co.*, 4th Dist. No. 05CA13, 2006-Ohio-3674, ¶¶9-11, (quoting McCormac & Solimine, Ohio Civil Rules Practice (3d Ed. 2003) 351, Section 13.17 (citing *Ollick v. Rice*, 16 Ohio App.3d 448, 16 Ohio B. 529, 476 N.E.2d 1062 * * *; see *Noble v. Colwell* [1989], 44 Ohio St.3d 92, at 97, fn. 7).

Applicable case law holds: "[f]or mandatory abstention pursuant to (C)(2) to apply, a proceeding must not implicate a debtor's rights that arise under the Bankruptcy Code. In other words, mandatory abstention is not appropriate in core proceedings." See, *In re Chandler*, 441 B.R. 452, 461 (Bankr. E.D. Pa. 2010). Proceedings where parties dispute the validity, priority, and extent of liens against property of the bankruptcy estate are subject to the court's core jurisdiction. See, *In re Zachman Homes, Inc.*, 83 B.R. 633, 638 (Bankr. D. Minn. 1985). Pertinent core proceedings to be at issue in this case include: **(a)** the allowance or disallowance of claims (11 U.S.C. §157(b)(2)(B), determined pursuant 11 U.S.C. §502); **(b)** the validity, extent, or priority of liens (11 U.S.C. §157(b)(2)(K)); and **(c)** claims seeking confirmations of plans (11 U.S.C. §157(b)(2)(L)). Since these bankruptcy proceedings are core proceedings, mandatory abstention is not appropriate in this case.

Timber View also submits that abstention is not warranted with respect to issues arising in connection with the proof of claims process for which this court has exclusive jurisdiction. Neither the state trial court action nor the related appeal will adjudicate the proof of claims that have been filed by the parties in this action.

Abstention is also not supported by the non-exclusive list of thirteen decisional criteria identified within *Nationwide Roofing & Sheet Metal, Inc. v. Cincinnati Ins. Co.* (*In re Nationwide Roofing & Sheet Metal, Inc.*), 130 B.R. 768 (Bankr.S.D.Ohio 1991); as abstention is exception not the rule. To wit:

1. The administration of this estate will be significantly delayed and the Debtor's estate will incur an unnecessary expense, as already explained in Section B, above; the state trial court made no lien determinations as to Timber View's interests in the Debtor's real property;
2. The pending administration of the Debtor's estate for the benefit of its creditors is governed by bankruptcy law not state law, the allowance or disallowance of claims, and the rights of avoidance by the trustee are dependent upon bankruptcy law;

14

3. The state law issues pertaining to judgment liens is neither difficult nor unsettled;

4. The state court action, and appeal is pending as described, above;

5. The jurisdictional basis for administration of the filed proofs of claim is exclusive in this Court;

6. The lien issues are integral to the administration of the proofs of claim;

7. The substance of the administration of the proofs of claim, which includes the lien issues is a "core" proceeding;

8. The lien claims are integral to the filed proofs of claim, it is unclear how they would be severed;

9. There is little burden on this Court to proceed with administration of the filed proofs of claims which include the lien issues; this Court could establish an expedited schedule for objections and hearing on the proofs of claim;

10. Since no proceeding has been commenced, there is no basis to allege forum shopping. In fact the record is clear in this case that the Debtor was deprived of all economic use and benefit of its real estate – despite a preexisting five year lease between Eventuresencore, Inc., and the Debtor executed on May 28, 2020, which had yielded substantial rents during 2020, and the first few months of 2021. Thereafter, in addition to other unlawful interferences, Reg Martin, Kenneth Goldberg, Ryan Shepler and David Stemen conspired to interfere with Debtor's assets and income by facilitating a fraudulent lease of the Debtor's real estate with its existing tenant to create a sham interpleader action to divert and starve the Debtor of its primary operating revenue;

11. The existence of a right to jury trial does not appear to be implicated;

12. There are no non-debtor related parties in this case;

13. A significant factor is that abstention will perpetuate delay and interference with the reorganization of the Debtor's obligations owing and repayment to its legitimate creditors, such as Timber View.

For all the forgoing reasons, abstention will not benefit the administration of Debtor's bankruptcy estate or this case.

## II. Conclusion:

For all the foregoing reasons, Timber View objects to both a limited relief from stay and abstention as to core proceedings for which this Court has statutory and/or exclusive jurisdiction.

Respectfully submitted,

/s/ Kevin E. Humphreys
Kevin E. Humphreys (0069168)
332 W. 6th Ave.
Columbus, Ohio 43201
614-299-7836/Cell: 614-395-2497
614-299-7837 (fax)
lawyer@colombus.rr.com

Trial Attorney for
Timber View Properties, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 31, 2023, a copy of the foregoing was electronically served on all registered ECF participants through the Court's ECF system, and/or on behalf of their respective clients, at the email address registered with the Court, and via regular prepaid first-class U.S. Mail upon:

Evergreen Site Holdings, Inc.
70 King Street
Eustis, Florida  32726-4048

Matthew T. Schaeffer, Subchapter V Trustee,
10 West Broad Street, Suite 2100
Columbus, Ohio 43215

Office of the U.S. Trustee
170 North High Street, Suite 200
Columbus, OH, 43215

/s/ Kevin E. Humphreys
Kevin E. Humphreys, Esq. (0069168)